**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>vs.<br>**JOSHUA JAMAL COLE,**<br>Defendant. | CASE NO. 19-cr-00439<br>**ORDER GRANTING MOTION TO SUPPRESS EVIDENCE**<br>Re: Dkt. No. 14 |

On August 11, 2019, Officers Michael Camacho and Patrick Airoso of the Oakland Police Department stopped defendant Joshua Jamal Cole and conducted a warrantless search of a black crossbody bag in Cole's possession. After locating a Glock 19 9mm caliber pistol with a loaded extended magazine inserted, the officers searched and arrested Cole. At the time, Cole was on active felony probation. On September 12, 2019, Cole was indicted for one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g).

Now before the Court is Cole's motion to suppress the fruits of the warrantless search of his bag and the warrantless seizure of his person. The government counters that the search was constitutional on the grounds that (i) the officers had reasonable suspicion to search Cole in light of his felony probation status, and (ii) the officers lawfully executed a *Terry* stop based on reasonable suspicion of criminal activity. The motion came on for hearing on January 9, 2020 and the Court conducted an evidentiary hearing on March 18, 2020.

Having carefully considered the papers submitted, as well as the arguments of the parties at the hearing, and for the reasons set forth below, the Court **GRANTS** Cole's motion to suppress and excludes from evidence all fruits of the warrantless search and seizure.

## I. BACKGROUND[1]

On August 11, 2019, at around 6:30 p.m., Oakland police officers Camacho and Airoso were on patrol in a marked vehicle when they pulled into the parking lot of Bookers Liquor Store at 1944 90th Avenue in Oakland, California. Officer Airoso, who was driving, parked the vehicle facing towards the entrance of the liquor store. Based on Officer Camacho's training and experience, he "kn[e]w that Bookers Liquor Store [wa]s a known 'Case' gang hangout." Officers Camacho and Airoso, as well as other Oakland Police Department officers, previously had arrested "Case" gang members in and around the liquor store parking lot for crimes related to guns and violence. The Oakland Police Department also staffs a permanent officer at the intersection of 90th Avenue and Olive Street, outside of the Bookers Liquor Store parking lot.

As Officers Camacho and Airoso pulled into the parking lot, Officer Camacho saw Cole walking across the parking lot, in front of the patrol car, near the front of the liquor store. Based in part on prior contacts, Officer Camacho recognized Cole as "a known 'Case' gang member who was on felony probation with a four-way search clause." Based on arrests by other Oakland Police Department officers, Officer Camacho "knew that Cole was known to possess firearms."

Using the onboard computer system in the patrol vehicle, Officer Camacho confirmed that Cole was on felony probation with a four-way search clause for a violation of California Penal Code section 25400(a), possession of a concealed firearm in a vehicle. The terms of his felony probation require Cole to "[s]ubmit to search and seizure by any Probation Officer, or any law enforcement officer at any time of the day or night with or without a search warrant, including vehicle, residence, person or any other property under your control."[2]

From the parked patrol car, Officer Camacho watched Cole walk across the parking lot and join a small group of people gathered on the sidewalk adjacent to Bookers Liquor Store. As

---

[1] The following background facts are taken from Officers Camacho's declaration and from the testimony from the hearing. (*See* Dkt. No. 16, Declaration of Officer Camacho in Support of United States' Opposition to Defendant's Motion to Suppress ("Camacho Decl.").)

[2] Declaration of Enrique Lara in Support of United States' Opposition to Defendant's Motion to Suppress ("Lara Decl."), ¶¶ 2, 3, Ex. A, B (defendant's felony probation conditions).

2

Officer Camacho watched Cole, he could "clearly see" that Cole had a "black satchel slung across his shoulder," which "appeared to be weighed down." Officer Camacho also "could see the outline of a long, rigid object inside the satchel." Cole "continuously and nervously" looked back at the patrol vehicle as he talked with the group for approximately one minute. Cole then walked eastbound on Olive Street, away from Bookers Liquor Store, the group of people, and the patrol vehicle. Based on Officer Camacho's training, experience, and observations, he suspected Cole was concealing a firearm in the black bag.

During the evidentiary hearing, the government produced the black bag and the firearm. The bag was padded and had an exterior pocket. The officers conceded that one could not see the outline of a firearm, only something long and rigid. It could have been a water bottle or even a book. In short, the officers' suspicions were based more on the other factors than anything that could have been seen with respect to the bag, especially at the distances at issue.

Officer Airoso drove the patrol vehicle through the Bookers Liquor Store parking lot, exited on Olive Street, and drove towards Cole. He parked the patrol vehicle parallel to the curb where Cole was standing. Both officers got out of their patrol car and approached Cole.[3] Officer Camacho told Cole that the officers were performing a probation search and placed Cole in handcuffs "for officer safety" while they conducted the search. Cole confirmed that he was on probation. Officer Camacho felt the outside of the black bag that was slung across the Cole's shoulder and "immediately" felt a "long, rigid, rectangular object," which he "recognized as similar to the feel of an extended gun magazine." Officer Camacho unzipped the bag and found a black firearm with an extended magazine.[4]

Officer Airoso subsequently conducted a search of Cole's person, during which he discovered two small baggies of marijuana, which were released to one of Cole's associates who

---

[3] Officers Camacho and Airoso were wearing body cameras. The footage submitted as evidence captures their interactions with Cole from this point in the encounter onward.

[4] Approximately twenty-eight seconds passed from the time Officer Camacho handcuffed Cole to the time the officers discovered the firearm and extended magazine.

3

was present during the interaction. The officers arrested Cole for being a felon in possession of a firearm, in violation of California Penal Code section 29800(a)(1).

## II. LEGAL FRAMEWORK

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "A warrantless search is unconstitutional unless the government demonstrates that it falls within certain established and well-defined exceptions to the warrant clause." *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009) (internal quotation marks and brackets omitted). Warrantless searches of probationers are permissible under the Fourth Amendment when they are authorized by a condition of probation and supported by reasonable suspicion of criminal activity. *United States v. Mayer,* 560 F.3d 948, 956 (9th Cir. 2009); *see also United States v. Knights,* 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."). In addition, following the seminal case of *Terry v. Ohio*, 392 U.S. 1 (1968), courts have consistently recognized that "[t]he Fourth Amendment permits brief investigative [*Terry*] stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396-97, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

The government bears the burden of showing that a warrantless search or seizure does not violate the Fourth Amendment. *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). When the government fails to carry its burden, *id*. at 1142 n.1, all fruits of the Fourth Amendment violation must be suppressed. *Id*. at 1143.

## III. ANALYSIS

The Court first considers whether the officers had reasonable suspicion to search Cole's bag in light of his felony probation status and the totality of the circumstances, such that the evidence found during the search must be excluded.

4

Reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity satisfies the requirements of the Fourth Amendment. *Knights*, 534 U.S. at 121, 122 S.Ct. 587. Such reasonable suspicion "is formed by 'specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Job*, 871 F.3d 852, 861 (9th Cir. 2017) (quoting *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002)). In determining whether reasonable suspicion existed, the Court considers the totality of the circumstances, including an officer's training and experience. *United States v. Valdes-Vega*, 738 F.3d 1074, 1080 (9th Cir. 2013) (en banc) (further observing that "[p]rotection of the public safety justifies such an approach"); *see also Navarette*, 572 U.S. at 397, 134 S.Ct. 1687 (observing that reasonable suspicion is a lower standard than preponderance of the evidence or probable cause). Courts have considered a variety of factually-specific contextual considerations in determining whether an officer had reasonable suspicion to perform a search, including: (1) whether any bulges were visible on the suspect, *Job*, 871 F.3d at 861; (2) the type of crime that is suspected to have been committed, *id.*; (3) whether the suspect exhibited nervous and evasive behavior, *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000); and (4) whether the encounter occurred in a high crime area, *id.* Additionally, an individual's "status as a probationer means that he begins with a lower expectation of privacy than is enjoyed by a citizen who is not subject to a criminal sanction." *United States v. King*, 736 F.3d 805, 808 (9th Cir. 2013).[5]

---

[5] The government goes one step further, arguing that not only did Cole begin with a lower expectation of privacy than the average citizen, but his probation search condition "'significantly diminishe[s]' that lower expectation of privacy." *King*, 736 F.3d at 809 (quoting *Knights*, 534 U.S. at 120, 122 S.Ct. 587). The Court disagrees. *King* held only "that a suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment." *King*, 736 F.3d at 810. The Ninth Circuit expressly declined to decide "whether the Fourth Amendment permits suspicionless searches of probationers who"—like Cole—"have not accepted a suspicionless-search condition, or of lower level offenders who have accepted a suspicionless-search condition." *Id.* Thus, this court agrees with the numerous courts in this district that have held that an officer must have reasonable suspicion to conduct a search of a probationer who has not agreed to a clear and unambiguous suspicionless search condition. *See United States v. Craft*, No. 17-CR-00108-JST-1, 2017 WL 4948998, at *2 (N.D. Cal. Nov. 1, 2017) ("[A]n officer must have reasonable suspicion to conduct a search of a probationer, unless the probationer is subject to a search clause that explicitly permits a search

5

The government contends that the officers' search was supported by reasonable suspicion in light of Cole's confirmed felony probation status and the associated search clause, which permitted the search of Cole's person and property under his control without a search warrant. The government also points to the following facts to support its claim of reasonable suspicion: (1) Cole was front of a liquor store that the officers "knew" to be a "gang hangout" and "high crime area"; (2) the officers "knew" Cole to be a "Case" gang member who possessed firearms and was on felony probation for possession of a concealed firearm in a vehicle; (3) Cole "continuously and nervously" looked at the patrol vehicle; and (4) Cole had a "black satchel slung across his shoulder" that "appeared to be weighed down," and Officer Camacho "could see the outline of a long, rigid object inside the satchel."

The first two of the above-listed facts provide some support for a finding of reasonable suspicion. First, this is not a case in which the term "high crime area" is being used to paint an entire neighborhood or community with a broad brush. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) ("We must be particularly careful to ensure that a 'high crime' area factor is not used with respect to entire neighborhoods or communities in which members of minority groups regularly go about their daily business[.]"). Rather, the government has introduced specific facts to demonstrate the high volume of gang and gun violence around Bookers Liquor Store, where the officers first observed Cole. *See id.* ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000)).

Second, contrary to Cole's assertions, at least some weight is afforded to Officer Camacho's knowledge of Cole's alleged gang membership and criminal history. Indeed, it is

---

without suspicion"); *United States v. Harris*, No. 16-cr-00222 HSG, ECF No. 55 at 8 (N.D. Cal. Apr. 18, 2017) (holding that "the police officers still required reasonable suspicion before performing a search" even where the defendant was subject to a probation search condition); *United States v. Gomez*, No. 13-cr-00282 PJH, 2014 WL 1089288, at * 14 (N.D. Cal. Mar. 3, 2014) (holding that a warrantless probation search condition required reasonable suspicion to perform a search but not probable cause).

6

axiomatic that officers must consult their experience, including their experience with a particular individual, when making reasonable inferences about whether that individual may be engaged in criminal activity. *See Valdes-Vega*, 738 F.3d at 1080. Here, Cole's prior conviction for possession of a concealed firearm in a vehicle and prior arrests for firearm possession are relevant to the totality of circumstances bearing on the reasonableness of the officers' suspicion.

Without more, however, these two facts do not provide the basis for a lawful search. Moreover, the Court is not persuaded that the remaining facts on which the government relies—namely, that Cole looked at the patrol vehicle nervously and carried a bag that was "weighed down" and showed "the outline of a long, rigid object"—are sufficient to tip the scale in favor of a finding of reasonable suspicion.

Although the Supreme Court has recognized that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion," "the reasonable suspicion determination must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 124–25, 120 S.Ct. 676. In *Wardlaw*, the defendant "fled" upon seeing police vehicles, which the court found to be "the consummate act of evasion." *Id*. "But [the] simple act of walking away from [] officers [can]not [be] reasonably mistaken for the type of 'flight' the officers confronted in *Wardlaw*." *Moreno v. Baca*, 431 F.3d 633, 643 (9th Cir. 2005). Likewise, that a probationer in a high-crime area might repeatedly glance at a nearly patrol vehicle, whether or not the probationer is engaged in criminal activity, is unsurprising. Had Cole engaged in other activities markedly different from other pedestrians in the neighborhood, this Court might have reached a different conclusion. Based on the facts presented, however, this fact is entitled to little if any weight in the reasonable suspicion determination.

Finally, Officer Camacho's observations about Cole's black crossbody bag fail to establish reasonable suspicion for the warrantless search.[6] As the video suggests, and the evidentiary hearing confirms, the bag was dark and made of a think canvas-like material with exterior pockets

---

[6] Caramacho Decl., Exhibit B, File Name: Camacho, Michael_2019-08-11_18-37-25.AVI, Timestamp 1:57; Exhibit C, File Name: Airoso, Patrick_2019-08-11_18-37-41.AVI, Timestamps 00:10 and 1:12.

7

on the front.[7] The officer's declaration implied that a firearm could be seen, but upon examination, it is clear it could not. Nor did the officers testify otherwise. That such a firearm was, in fact, in the bag is of no import. *See United States v. Griffith*, 762 F. Supp. 2d 1179, 1191 (D. Ariz. 2010) (officers' testimony that a vehicle appeared "heavily laden" was not credible and could not support a finding of reasonable suspicion where "the photographs with the marijuana in the vehicle do not show a vehicle that is sagging in the back or weighed down from the marijuana").[8]

In sum, the totality of the circumstances indicates that Officers Camacho and Airoso lacked reasonable suspicion sufficient to satisfy the requirements of the Fourth Amendment either as appropriate as a warrantless search of a probationer or a *Terry* stop.[9]

Notwithstanding this determination, the government argues suppression is unwarranted, citing *Herring v. United States*, 555 U.S. 135 (2009) and *Utah v. Strieff*, 136 S.Ct. 2056 (2016). In these cases, the Supreme Court held that "to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144; *see also Strieff*, 136 S. Ct. at 2063 (noting that the "exclusionary rule exists to deter police misconduct"). Both *Herring* and *Strieff*, however, involved application of the attenuation doctrine, which

---

[7] Dkt. No. 20-1, Declaration of Joshua Cole in Support of Motion to Suppress, ¶ 2.

[8] *United States v. Job*, 871 F.3d 852 (9th Cir. 2017), on which the government relies, does not compel a different result. There, the Ninth Circuit gave "significant weight to an officer's observation of a visible bulge in an individual's clothing that could indicate the presence of a weapon as evidence supporting reasonable suspicion," but ultimately found that "the facts that Job's pants appeared to be 'full of items' and he appeared nervous do not support the conclusion that he was engaged in criminal activity." *Id*. at 861. Unlike here, the *Job* court did not appear to have any visual evidence to controvert the officer's observation. Moreover, a "visible bulge in an individual's clothing" is more likely to stand out and raise suspicion as compared to a "long, rigid" object in a bag.

[9] As noted, the government also argues that Officer Camacho lawfully executed a *Terry* stop based on reasonable suspicion of criminal activity, namely that Cole, a convicted felon, had a firearm concealed in the satchel that was slung across his shoulder. For the reasons explained herein, however, the Court finds the officers lacked reasonable suspicion of criminal activity. As such, the seizure of Cole was not valid as a *Terry* stop or protective search.

8

provides for admissibility when the connection between unconstitutional police conduct and evidence is remote or has been interrupted by intervening circumstances. For example, in *Herring*, the Supreme Court held that a recordkeeping error by the police, which led to an unlawful search, was not so objectively culpable as to require exclusion. 555 U.S. at 144. *Herring* and *Strieff* are inapplicable here, however, because the constitutional violation was not attenuated from the search, but rather, was the search itself. As such, suppression is the appropriate remedy in this case.

**IV. CONCLUSION**

For the reasons stated herein, the Court **GRANTS** Cole's motion to suppress and excludes from evidence all fruits of the search of Cole's bag and his person.

In light of this Order, the parties are ordered to meet and confer regarding the status of these proceedings. The parties shall file a joint statement regarding the same by Thursday, March 26, 2020.

This Order terminates Docket Number 14.

**IT IS SO ORDERED.**

Dated: March 24, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**